JENKINSON, Administratrix, Respondent, vs. NEW YORK CASUALTY COMPANY, Appellant.

*October 13—November 10, 1942.*

For the appellant there were briefs by *Bendinger, Hayes, Kluwin & Schlosser* and *Kenneth P. Grubb,* all of Milwaukee, and oral argument by *Mr. Grubb* and *Mr. Gerald P. Hayes.*

For the respondent there was a brief by *Wolfe & Harte* and *Z. F. O'Leary,* all of Milwaukee, and oral argument by *Mr. O'Leary.*

WICKHEM, J. This case involves the issue of co-operation, it being asserted by defendant insurance company that insured, Aleck Myers, failed to comply with the terms of the policy, failed to co-operate with defendant in the defense of the action, and failed in good faith to defend the action of his wife against him which resulted in a judgment now sought to be recovered from defendant.

The facts are as follows: A collision occurred between a car driven by Myers and one driven by Sprague. Mrs. Myers was a guest in her husband's car and was severely injured. In reporting the accident, Myers stated that he was crowded off the road by a car coming from the opposite direction and caused to leave the highway and tip over. Several weeks after the accident, separate investigations by defendant through the office of two of its attorneys resulted in statements from Myers that as he was proceeding on his own side of the highway, and driving carefully, he was struck when the Sprague car coming from the opposite direction suddenly pulled out into his line of travel to pass another car. Later, the facts of Myers' statements were incorporated into answers, and Myers, who in the meantime had hired his own attorney, refused to verify the answers or to give any assistance to defendant. As a consequence, defendant tendered him the

defense of the action. Later, through his attorney, Myers put in an answer denying negligence on information and belief. Upon the trial Myers' attorney failed to conduct a *voir dire* of the jury, or to cross-examine any of plaintiff's witnesses or to put in any evidence on behalf of Myers. From this defendant contends that there is a clear breach by insured of his obligation to the company; that one of two things is true: Either that he deliberately falsified on two occasions in his statements to the company as to how the accident happened; or if he then told the truth, that he completely defaulted in his obligations to the company by refusing to verify an answer based on these statements, or in any substantial sense to contest his wife's claims upon the trial of the personal-injury case. Plaintiff's position is that when some two weeks after the accident Myers made the statements, he thought they were correct. He is not sure even now that they may not be correct. But he was not sure about them, and as he got thinking about the matter, he decided that he could not verify an answer denying negligence.

None of this rings true. Myers told a very definite story to investigators from Madison and Milwaukee on two separate occasions. There were minor variances in the two statements but that is not material. He maintained strongly in each that he was driving along on the right-hand side of the highway, keeping an adequate lookout when the Sprague car, going in the opposite direction, suddenly drove into his path and precipitated the accident. This story was supported by a statement made but not signed by his wife in which she attributed no negligence to her husband, and told the same story that he did. There was a statement to the same effect by his granddaughter. On the basis of this, defendant concluded that there was no liability, and answers were drawn on the basis of the statements. Myers refused to verify the answers. He refused, in fact, to have any helpful conference with defendant's attorneys, and referred defendant to an attorney

whom he had retained to defend him. This attorney simply forwarded the information that Myers felt he could not verify the answer for fear of committing perjury. Subsequent to the trial of the personal-injury case, when defendant company brought action to enjoin Minnie Myers from suing on the policy, an adverse examination was held in which Myers reiterated his belief in the truth of his original statements.

We are of the view that the undisputed facts in this case put plaintiff into a dilemma from which no amount of legal argument can extricate her. The statements made by insured are either false or true, and if false, they could not be other than intentionally false. The subject matter of the statements was simple. The statements were taken several weeks after the accident, and not under the influence of any shock. No qualification in any essential particular was put upon the statements by the insured and they are consistent with his report of the accident. They were corroborated by his wife, who was later the plaintiff in a suit against her husband, and by his granddaughter. They were made in response to a contractual obligation to disclose fairly, frankly, and truthfully material information concerning the accident to enable the insurer to determine whether there was a defense. It was held by this court in *Buckner v. General Casualty Co.* 207 Wis. 303, 241 N. W. 342, that conditions in a policy requiring such statements are reasonable and necessary to protect insurance companies against the risk of collusion between the insured and those claiming damage from him for alleged torts, and that they are particularly necessary in cases where liability is claimed to exist in favor of one member of the family against another member of the family, with the ultimate loss to be borne by the insurer.

It was held in the *Buckner* Case, *supra,* that while cooperation does not mean that the insured is to combine with the insurer to present a sham defense, it does require from the insured a complete and truthful statement of the facts

made in the spirit of co-operation and helpfulness. See also *Hunt v. Dollar*, 224 Wis. 48, 271 N. W. 405; *Hoffman v. Labutzke*, 233 Wis. 365, 289 N. W. 652.

In this case there is no profit in canvassing the possibilities that the statements of the insured were not intentionally false, because if they were not, it is certain that the insured wholly failed to co-operate by verifying an answer in accordance with them. It has generally been held and quite properly, we think, that a knowing and wilful refusal to verify an answer in order that the insurance company may defend an action against him, constitutes a failure to co-operate and a breach of the conditions in the policy. In this connection see *Luntz v. Stern*, 135 Ohio St. 225, 20 N. E. (2d) 241; *Coleman v. New Amsterdam Casualty Co.* 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443.

It remains to be considered whether the evidence is open to any reasonable inference that there was here something less than a wilful refusal to verify the answer, or whether the motive in refusing to verify the answer was fear of perjury. Here, again, plaintiff operates under the difficulty that a favorable conclusion on this branch of the case adversely determines it against her on the other branch of the case. Assuming, without deciding, that the refusal to verify could be accounted for by reasons other than a wilful determination not to co-operate with the defendant insurer, that reason could only be a fear of perjury, and this, indeed, was the explanation of the insured himself. But such a conclusion would simply stamp the original statements of the insured as deliberately and intentionally false. It is extremely doubtful if such a conclusion is valid in any event. The engaging of a lawyer by the assured, his refusal to have any adequate conference with the attorneys for the insurance company, his refusal to verify either of two answers, one couched in terms of general denial of negligence, and the other practically in the language of his own statements, coupled with the fact that he ultimately

did deny negligence on information and belief, are only consistent, we think, with the purpose not to co-operate with defendant insurance company. We do not propose to consider as an independent operative fact the manner in which the personal-injury case was conducted. It does seem to us that the failure to cross-examine or to call any witnesses or in any way seriously to resist plaintiff's claim, when considered as part of insured's pattern of conduct, strongly points to non-co-operation. In this connection, it is necessary to distinguish one case which is quite strongly relied on by plaintiff. In the case of *Buchberger v. Mosser,* 236 Wis. 70, 294 N. W. 492, the insured filed false statements upon the solicitation of the insurance company and upon representations that these statements were necessary to defend the case. This court held that this constituted over-co-operation, rather than a failure to co-operate. The distinction between this and the cases heretofore cited is obvious. The false statements were solicited by the company and did not in any manner deceive them, and the insured was simply guilty of a too great willingness to further the defense which the company sought to set up.

It is our conclusion in this case that there was such a breach by the insured of his obligation to defendant insurer as completely to cancel his coverage under the policy. It follows that the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.